UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARKUS SMITH,      AIS # 233 995, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:20-CV-122-MHT-CSC |
| | ) |
| WARDEN WALTER MYERS, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Markus Smith, who is currently incarcerated at the Bullock Correctional Facility, in Union Springs, Alabama, has filed pro se this 42 U.S.C. § 1983 action for damages for certain claimed violations of his federally protected rights while confined in the Easterling Correctional Facility ("Easterling"), in Clio, Alabama.  Doc. 1.  Plaintiff brings suit against the following Easterling defendants:  (1) Warden Walter Myers;[1] (2) Correctional Lieutenant, Jennifer McCovery; (3) Senior Correctional Officer, Timothy Isaac; (4) Correctional Lieutenant, Dominic Jones; (5) Senior Correctional Officer, Anthony N. Crittenden; (6) Senior Correctional Officer, Kendrick Boyd; and (7) Correctional Officer, Reginald V. Kincey ("Defendants").  *Id*. at 2-3.  Plaintiff alleges Defendants violated his Eighth Amendment constitutional rights when Defendants allegedly placed another inmate in Plaintiff's cell while Plaintiff was under suicide prevention treatment.  *Id*. at 4.  Plaintiff maintains, being in the same cell as the other inmate caused Plaintiff emotional distress and increased his risks of depression and hallucination.  *Id*.  For relief, Plaintiff seeks monetary damages and requests injunctive relief "to prevent all suicidal inmate[s] from being subject to what Plaintiff had to experience. . . ." *Id*. at 5.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief.  Docs. 22, 23, 25.  In these filings, Defendants deny they acted in violation of Plaintiff's constitutional rights.  *Id*.  Upon receipt of Defendants' special report, the Court entered an order which provided Plaintiff an opportunity to file a response to Defendants' report.  Doc. 26.  This order advised Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  *Id*. at 1-2.  The order further cautioned

---

[1]     Defendant Walter Myers, once employed by the Alabama Department of Corrections as Correctional Warden III at Easterling, has since retired.  Doc. 22 at 1.

Plaintiff that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken,…the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law." *Id.* at 2. Plaintiff filed a response to Defendants' special report. Doc. 38. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiffs opposition, the Court concludes that Defendants' motion for summary judgment (Doc. 23) is due to be **GRANTED**.

## I.        Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593-594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This Court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the

non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Plaintiff has failed to establish that there is a genuine issue as to a material fact to preclude summary judgment.

## II.     Factual Background

By way of overview, Plaintiff asserts Defendants violated his constitutional rights when they placed Inmate Omar Kelley[2] in Plaintiff's cell while Plaintiff was under suicide prevention. *See* Doc. 1. Plaintiff alleges Defendants' actions placed Plaintiff at risk and caused him emotional distress. *Id*. at 4.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

In May 2019, Plaintiff was placed on "Acute Suicide Watch" by Easterling medical health personnel. Doc. 23-7. According to an incident report:

> On May 6, 2019, [Defendant McCovery] was assigned as Dormitory B Restrictive Housing Unit Commander. At approximately 12:50 PM, [Plaintiff] stated to [Defendant McCovery] that he felt suicidal. At approximately 12:55 PM, [Defendant McCovery] reported the incident to Mental Health Specialist Patricia Latham. At approximately 1:00 PM, [Plaintiff] was escorted to the Health Care Unit for medical assessment (see attached body chart). At approximately 1:12 PM, [Plaintiff] was placed on Acute Suicide Watch by Mental Health Specialist, Patricia Latham. [Plaintiff] was only allowed one suicide smock, mat and a blanket inside of his cell.

*Id*. In the "statement" section of Plaintiff's May 6 body chart, Plaintiff told medical personnel: "I was suicidal." Doc. 23-9 at 1. Medical personnel noted there were no acute injuries observed or reported. *Id*. According to Easterling's prison records, on May 6, 2019, at approximately 9:34 p.m., Plaintiff was placed in "Bed: B1-1A." Doc. 23-8 at 2.[3] Two days later, at approximately 9:22 p.m., Plaintiff was placed in "Bed: B26-1A." *Id*.

Also on May 6, an inmate named Omar Kelley was placed on "Acute Suicide Watch." Doc.

---

[2]     In his complaint, Plaintiff appears to have misspelled the inmate's name. *See* Doc. 1 at 4. Defendants' evidence shows the correct spelling of this inmate's name to be "Omar Kelley." Doc. 23-11 at 1.

[3]     Plaintiff's medical records show, Plaintiff was again assessed by medical staff on May 7 and May 8, 2019. Doc. 23-12 at 3-6. On May 8, Plaintiff denied any suicidal ideation. *Id*. at 6.

23-10. Pursuant to the incident report, detailing this medical incident:

> On May 6, 2019, [Defendant McCovery] was assigned as Dormitory B Restrictive Housing Unit Commander.  At approximately 12:00 PM, inmate Omar Kelley… stated to [Defendant McCovery] that he felt suicidal.  At approximately 12:05 PM, [Defendant McCovery] reported the incident to Mental Health Specialist Patricia Latham.  At approximately 12:10 PM, inmate Kelley was escorted to the Health Care Unit for medical assessment.  (See attached body chart).  At approximately 12:24 PM, inmate Kelley was placed on Acute Suicide Watch by Mental Health Specialist, Patricia Latham.  Inmate Kelley was only allowed one suicide smock, mat and a blanket inside of his cell.

*Id*.  According to Easterling's prison records, on May 6, 2019, at approximately 9:30 p.m., Inmate Kelley was placed in "Bed: B2-1A."  Doc. 23-11 at 3.  On May 7, 2019, at approximately 3:56 a.m., Inmate Kelly was placed in "Bin: Holding" for a "bed change" and at approximately 9:54 p.m., Inmate Kelly was placed in "Bed: B3-1A."  *Id*.

Additional facts are set forth as necessary.

## III.    Discussion

In his complaint, Plaintiff alleges Defendants violated his constitutional rights when,

> [o]n May 7, 2019 at approximately 6 p.m. [Defendant Boyd] opened Plaintiff's cell door and placed another inmate in the cell with Plaintiff by the name of [Omar Kelley].  Inmate Kelley was in closed custody for stabbing another inmate.  Inmate Kelley while being placed in the cell with Plaintiff informed [Defendant Boyd] that he was in closed custody and was not suppose[d] to be in a cell with anyone.  [Defendant Boyd] told inmate Kelley 'That you will be O.K. or alright' and made inmate Kelley enter into the cell with Plaintiff.  During the time Plaintiff and inmate Kelley was in the cell together posed a grave risk of harm to seriously mental ill inmate[s].

Doc. 1 at 4.  Plaintiff alleges, because he was housed with Inmate Kelley, while on suicide watch, Plaintiff faced increased risk of mental health illness and symptom exacerbation.  *Id*.  Plaintiff requests monetary damages and injunctive relief for his emotional damages.  *Id*. at 5.

Defendants contend, *inter alia*, Plaintiff's claims lack merit, Defendants did not violate Plaintiff's constitutional rights, and Defendants are entitled to official and qualified immunity.  *See* Docs. 22, 23.

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116

S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### A.    *Deliberate Indifference*

#### 1.    *Standard of Review*

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (citations and quotation marks omitted). Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Id.* at 828. "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eleventh Circuit, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising

the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act

can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and quotation marks omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Plaintiff must first demonstrate an objectively substantial risk of serious harm existed to him prior to the inmate attack at issue and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). If he establishes these objective elements, Plaintiff must then satisfy the subjective component. To do so, Plaintiff "must [show] that the defendant[s] subjectively knew that [Plaintiff] faced a substantial risk of serious harm. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a *particular threat or fear felt by [Plaintiff]*. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists— and the prison official must also draw that inference. *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

### 2. Failure to Protect

Plaintiff alleges, in May 2019, Defendants acted with deliberate indifference to his safety when, while under suicide prevention, Inmate Kelley was placed in Plaintiff's cell. Plaintiff alleges, because Inmate Kelley was supposed to be in closed custody and isolated, Plaintiff was at risk of serious harm to his health and safety.

Defendants maintain they did not violate Plaintiff's constitutional rights and assert they are entitled to qualified immunity. Defendants' evidence includes Defendants' affidavits and other prison records. Defendants testify as follows:

Defendant McCovery testifies: "On May 6, 2019, I, Correctional Lieutenant Jennifer McCovery, assigned [Plaintiff] to Cell B1-1A on Suicide watch alone. I have no further knowledge of the alleged incident." Doc. 23-1.

Defendant Isaac testified: "On May 6, 2019, I, Correctional Officer Timothy Isaac along with [Defendant Crittendon] escorted [Plaintiff] to the Administrative Building to talk with a Mental Health Counselor. I have no further knowledge of the alleged incident." Doc. 23-2.

Defendant Jones testifies: "On May 7, 2019, I, Correctional Lieutenant Dominic Jones was assigned as A Day Shift Commander. I do not have any knowledge of [Defendant Boyd] placing [Inmate Kelley] in a crisis cell with [Plaintiff] on May 7, 2019, at approximately 6:00 PM. [Defendant Boyd] was assigned to A Night Shift which starts at 6:00 PM and ends at 6:00 AM. I was assigned to A Day Shift which starts at 6:00 AM and ends at 6:00 PM." Doc. 23-3.

Defendant Crittenden testifies: "On May 6, 2019, I, Correctional Officer Anthony Crittendon along with [Defendant Isaac], escorted [Plaintiff] to the Administrative Building to talk with a Mental Health Counselor. I have no further knowledge of the alleged incident." Doc. 23-4.

Defendant Boyd testifies: "On May 6, 2019, I do not recall the incident that [Plaintiff] is referring to. I also looked in our TPM system, and it does not show an inmate by the name of Amar Kelley in the system or has been in the system." Doc. 23-5.

Defendant Kincey testifies: "On May 6, 2019, I, Correctional Officer Reginald Kincey escorted [Plaintiff] from the Administrative Building to the Restrictive Housing Unit Crisis Cell. I have no further knowledge of the alleged incident." Doc. 23-6.

Defendant Myers testifies: "On May 6, 2019, [Plaintiff] was placed on suicide watch. ADOC's TPM system does not show an inmate by the name of Amar Kelly in the system or has been in the system. I have no further knowledge of this alleged incident." Doc. 25-1.

Plaintiff does not allege that he complained to any prison official he was in danger of being attacked by Inmate Kelley, but nonetheless maintains Defendants should have known, by placing Inmate Kelley, who allegedly stabbed another inmate, in Plaintiff's cell, Plaintiff's constitutional rights would be violated. Plaintiff asserts no allegation that he was physically injured, nor contends Easterling's prison records, showing Plaintiff and Inmate Kelley not to be placed in the same cell on May 7, are incorrect. *See* Docs. 23-8 at 2, 23-11 at 3. Nonetheless, Plaintiff continues to maintain all

Defendants knew Plaintiff was at risk and, by placing Inmate Kelley in Plaintiff's cell, Defendants violated Plaintiff's rights.

There is simply no evidence, however, any named defendant knew of any risk from which they could infer a substantial risk to Plaintiff.

Even had Plaintiff satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any Defendant subjectively knew of a risk of harm to him posed by Inmate Kelley, or any inmate for that matter. Plaintiff's contention that when Defendants allegedly placed Inmate Kelly, who supposedly stabbed another inmate, in Plaintiff's cell while on suicide watch, violated his constitutional rights, is not evidence any Defendant knew that he faced a substantial risk of harm. *Caldwell,* 78 F.3d at 1099-1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The record is devoid of evidence Defendants knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that Defendants actually drew this inference, and, thereafter, ignored the known risk. Plaintiff has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial risk of harm.

The evidence reflects, when Plaintiff stated that he felt suicidal, on May 6, 2019, Easterling staff and Defendants responded quickly and escorted Plaintiff to medical personnel. Doc. 23-7. After Plaintiff's evaluation, medical personnel indicated Plaintiff needed to be placed on suicide watch. *Id.*; *see also* Doc. 23-9 at 1. Plaintiff was, thereafter, placed in "Bed: B1-1A," for two days. Doc. 23-8 at 2. On May 8, Plaintiff was placed in "Bed: B26-1A." *Id.* Easterling's medical records further show, on May 6, 2019, Inmate Kelley was assessed for feeling suicidal and later placed in "Bed: B2-1A." Docs. 23-10, Doc. 23-11 at 3. On May 7, 2019, at approximately 3:56 a.m., Inmate Kelley was placed in "Bin: Holding" for a "bed change" and at approximately 9:54 p.m., Inmate Kelley was placed in "Bed: B3-1A." Doc. 23-11 at 3. The record, therefore shows, Plaintiff was not housed in the same cell as Inmate Kelley.

Because Plaintiff has failed to show Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. *Carter*, 352 F.3d at 1350. Since the record fails to demonstrate that the incident involving Plaintiff and Inmate Kelley occurred due to any deliberate indifference or reckless disregard by Defendants, summary judgment is due to be granted in their favor. *See Celotex Corp.*, 477 U.S. at 322.

### B.    *Supplemental Jurisdiction*

To the extent Plaintiff seeks to bring state law claims, review of such claims is only appropriate upon exercise of this court's supplemental jurisdiction.  In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact."  *L.A. Draper and Son v. Wheelabrator Frye, Inc*., 735 F.2d 414, 427 (11th Cir. 1984) (citations omitted).  Exercising supplemental jurisdiction is discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."  *L.A. Draper and Son*, 735 F.2d at 428; *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (noting that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (citation and quotation marks omitted). Because of the Court's resolution of the federal claims in the complaint, Plaintiff's supplemental state law claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### IV.    Conclusion

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (Doc. 23) be GRANTED;

2.  Plaintiff's supplemental state law claims be DISMISSED without prejudice;

3.  This case be DISMISSED with prejudice;

4.  Judgment be ENTERED in favor of Defendants;

5.  No costs be taxed.

It is further

ORDERED that **by November 15, 2022**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal

conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

      Done, this 1st day of November 2022.

                          /s/  Charles S. Coody
                          CHARLES S. COODY
                          UNITED STATES MAGISTRATE JUDGE